BRIAN L. DEVROY,

        Petitioner,

  v.

        Case No. 22-cv-727-pp

GARY BOUGHTON,

        Respondent.

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS (DKT. NO. 37), DISMISSING CASE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

On September 8, 2023, the petitioner filed a second amended *habeas* petition challenging his 2009 conviction for first-degree intentional homicide. Dkt. No. 33. The petitioner brings two claims for ineffective assistance of counsel and a claim for newly discovered evidence warranting a new trial. Id. at 6–10. The court screened the petition and allowed the petitioner to proceed on all three grounds. Dkt. No. 35 at 3. On December 11, 2023, the respondent filed a motion to dismiss the second amended petition, arguing that the petition was untimely. Dkt. No. 37. The petitioner opposed the motion. Dkt. No. 39. Because the petitioner failed to comply with the Antiterrorism and Effective Death Penalty Act's (AEDPA) one-year statute of limitations, the court will dismiss the petition as untimely.

**I.    Background**

    **A.**    <u>Underlying State Case</u>

On October 19, 2009, a jury found the petitioner guilty of first-degree intentional homicide. Dkt. No. 20-1 at 1. The evidence presented by the state

1

included the petitioner's confession to Detective Carl Buschmann, which the petitioner argued was false. Dkt. No. 20-2 at 2–3. On November 13, 2009, the state court sentenced the petitioner to life in prison with eligibility for extended supervision after November 13, 2055. Dkt. No. 20-1 at 1. The court entered judgment on November 17, 2009. Id. On June 19, 2012, the Wisconsin Court of Appeals affirmed the judgment and affirmed the circuit court's denial of the petitioner's §974.02 post-conviction motion for a new trial. Dkt. No. 20-2. On October 16, 2012, the Wisconsin Supreme Court denied the petition for review. Dkt. No. 20-3.

On August 6, 2018, the petitioner filed a new post-conviction motion seeking post-conviction discovery. Dkt. Nos. 20-4 at 11, 22-3 at 133. The circuit court denied the motion on August 13, 2018, and the petitioner did not appeal. Dkt. Nos. 20-4 at 10, 20-7 at 2.

On October 24, 2018, the petitioner filed a new post-conviction motion under Wis. Stat. §974.06, arguing ineffective assistance of counsel during his direct appeal and newly discovered evidence warranting a new trial. Dkt. Nos. 20-4 at 10, 20-7 at 3. On June 27, 2019, the circuit court denied the motion, and the petitioner appealed. Dkt. Nos. 20-4 at 5, 20-7 at 3–12. On March 23, 2021, the Wisconsin Court of Appeals affirmed the circuit court. Dkt. No. 20-7. On April 15, 2021, the court of appeals denied the petitioner's motion for reconsideration of its decision. Dkt. No. 20-8 at 35. On August 11, 2021, the Wisconsin Supreme Court denied his petition for review. Dkt. No. 20-9.

B.     Federal *Habeas* Petition

On June 22, 2022 the petitioner filed in federal court his original petition for writ of *habeas corpus* under 28 U.S.C. §2254. Dkt. No. 1. On September 1, 2022, the petitioner filed an amended petition on the court's *habeas* form as

required by Civil Local Rule 9(a) of the Eastern District of Wisconsin. Dkt. No. 9. The court screened the petition and allowed the petitioner to proceed on three of the grounds in his amended petition. Dkt. No. 12 at 8. The petitioner then moved to file a second amended petition. Dkt. No. 15. In the interim, the respondent moved to dismiss the first amended petition. Dkt. No. 19. The court denied the motion to dismiss without prejudice and appointed counsel for the petitioner. Dkt. No. 30 at 10. On September 8, 2023, the petitioner, now represented by counsel, filed his second amended petition, which is the operative petition. Dkt. No. 33.

The petition contains three grounds for relief: (1) "[i]neffective assistance of trial and appellate counsel for failing to raise argument for a due process violation for the failure of the state to produce . . . the investigating detectives' memo books"; (2) "[n]ewly discovered evidence that Detective Buschmann has a history of misconduct throughout his career;" and (3) "[i]neffective assistance of counsel for failing to object to ADA Shomin's vouching for Detective Buschmann's credibility." Dkt. No. 33 at 6–10.

## II. The Parties' Arguments

### A. Respondent's Motion to Dismiss (Dkt. No. 37)

The respondent moved to dismiss the second amended petition as untimely. Dkt. No. 38 at 4–7. He argues that the petitioner filed his federal *habeas* petition more than eight years after his conviction became final, far beyond the one-year limitation period imposed by AEDPA. The respondent contends that the petitioner's conviction became final on January 15, 2013, the day after the expiration of the petitioner's ninety-day deadline to file a petition for writ of *certiorari* with the United States Supreme Court. Id. at 6–7 (citing 28 U.S.C. §2244(d)(1)(A)). He argues that this means the petitioner's one-year

3

limitation period to file a federal *habeas* petition expired on January 15, 2014. Id. Though conceding that a petitioner can toll the limitation period by filing subsequent state post-conviction motions, the respondent asserts that the petitioner failed to toll the one-year deadline because he did not file any post-conviction motions until 2018, four years after his limitation period had expired. Id. at 7.

The respondent argues that the court should not equitably toll the one-year deadline. Id. He claims that the petitioner cannot establish that there were any obstacles prohibiting him from filing a timely petition, other than the allegedly "sho[dd]y legal advice" he received from appellate counsel. Id. at 8. The respondent argues that the petitioner did not diligently pursue his rights until 2018—again, after his limitation period had expired—when he sought documents from the Milwaukee Police Department to support his post-conviction claims. Id. at 9–10.

The respondent argues that there is insufficient evidence that the petitioner is actually innocent so as to overcome the untimeliness of his petition. Id. at 10. He states that the petitioner confessed to the charges multiple times to multiple people, calling into question whether a reasonable jury would be swayed by new physical evidence that the petitioner would have used to impeach the credibility of Buschmann, one of the three individuals to whom he confessed the murder. Id. at 12–13.

In the alternative, the respondent argues that even if deemed timely, the court should dismiss the petition because the petitioner's claims are procedurally defaulted. Id. at 13. He argues that when the Wisconsin Court of Appeals dismissed the petitioner's ineffective assistance of counsel claims (Grounds One and Three of the second amended petition), it did so by applying

4

Escalona-Naranjo, a state procedural bar that constitutes an adequate and independent state law ground. Id. at 15. The respondent asserts that federal *habeas* review of Grounds One and Three is precluded because the claims are procedurally defaulted. Id. at 16.

The respondent argues that Ground Two of the second amended petition is not cognizable on *habeas* review. Id. He states that the petitioner's arguments about Buschmann's prior misconduct do not implicate a federal right or "otherwise support[] a claim that the petitioner is in custody in violation of the Constitution." Id. at 17. The respondent also argues that the claim is procedurally defaulted because the petitioner did not fairly present it to the state courts. Id. Citing to (Edward) Anderson v. Benik, 471 F.3d 811 (7th Cir. 2006), the respondent discusses four factors that the courts use to consider whether a constitutional claim was fairly presented to the state court:

> 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 18 (quoting (Edward) Anderson, 471 F.3d at 815). Applying these factors, the respondent asserts that the petitioner's appellate briefs filed in the Wisconsin Court of Appeals and Wisconsin Supreme Court never indicated that the petitioner intended to raise a constitutional claim as opposed to a pure state law claim for a new trial. Id. at 19–21. The respondent argues that even if the petitioner presented this claim to the state court now, it would be subject to the same Escalona-Naranjo state procedural bar as Grounds One and Three. Id. at 21.

5

The respondent argues that the petitioner cannot prove cause and prejudice or a fundamental miscarriage of justice to excuse his procedurally defaulted petition. Id. He contends that the petitioner's defenses for his procedural defaults—*pro se* status, delayed discovery of supporting case law, ineffective assistance of post-conviction counsel and newly discovered evidence—do not support a claim that his entire trial or appeal was "infected" with constitutional error. Id. at 22.

B.     Petitioner's Opposition (Dkt. No. 39)

The petitioner responds that the court should equitably toll his petition or, in the alternative, find that he has established cause and prejudice to overcome any procedural defaults. Dkt. No. 39 at 2. He argues that his appellate counsel advised him of the possibility of *habeas* relief after the Wisconsin Supreme Court denied his petition for direct review in October 2012. Id. at 6. The petitioner says that he began "reviewing his case for potential habeas grounds" as early as 2013. Id. He explains that he met with a fellow incarcerated person who assisted him with reviewing his case and performing research in the prison's law library. Id. But the petitioner says that he was placed in segregation in 2014. Id. The incarcerated person who assisted the petitioner also was transferred to a different facility and took the petitioner's documents with him. Id. The petitioner did not have access to his documents until summer 2015. Id. An additional period of segregation in 2015 and a transfer to a new facility further interrupted the petitioner's work on his petition. Id. at 6–7. The petitioner argues that he did not have the evidence to move forward with his petition until 2018, at which point he promptly filed a post-conviction motion. Id. at 7. He maintains that he filed his *habeas* petition within a year of exhausting that post-conviction motion in state court. Id. The

6

petitioner argues that the combination of these facts justifies the court finding the "extraordinary circumstances" required for equitable tolling. Id. at 8.

The petitioner also maintains that he can overcome any procedural bar to his petition because cause and prejudice exist to excuse his default. Id. at 9. He argues that there was an external impediment to him raising Grounds One and Three, namely that information regarding prior complaints about Buschmann's interrogation tactics was withheld from his counsel. Id. at 10–11. The petitioner argues that this information could have led to the exclusion of his confession to Buschmann, which would have severely weakened the state's case against him. Id. at 11. As for Ground Two, the petitioner argues that his newly discovered evidence about Buschmann would have impacted a Miranda-Goodchild hearing during his initial prosecution. Id. at 12. The petitioner states that he fairly raised this claim in state court by arguing that the newly discovered evidence would have changed the verdict in his case. Id. at 13. The petitioner argues that he was representing himself when he argued that newly discovered evidence would have produced a different verdict, and that "[t]his claim, at its core, is a due process claim, even if [the petitioner] did not use the particular terms." Id. The petitioner argues that the court should apply equitable tolling and excuse his procedural defaults so that his petition can be heard on the merits. Id. at 14.

   C.   Respondent's Reply (Dkt. No. 42)

The respondent replies that the petitioner failed to establish grounds for equitable tolling. Dkt. No. 42 at 2. According to the respondent, the petitioner fails to prove that his stated "impediments were either outside of his control or that they prevented him from timely filing his petition." Id. at 3. The respondent argues that the petitioner's first period of segregation occurred in

7

2014, over fourteen months after his conviction became final. Id. at 4. The respondent argues that the petitioner had time to file his petition before "two of this three cited hurdles came to fruition." Id. The respondent also questions why the petitioner waited years to make open records requests or to request a copy of the report reflecting the Buschmann misconduct. Id.

The respondent also argues that the petitioner failed to establish cause and prejudice to excuse his procedural defaults. Id. at 5. The respondent argues that the Wisconsin Court of Appeals properly applied the Escalona-Naranjo procedural bar to the petitioner's second post-conviction motion because he presented no grounds as to why those claims were not raised in his first post-conviction motion. Id. at 6. According to the respondent, the petitioner's self-represented status and confusion about the procedural bar does not constitute the requisite cause to excuse his procedural default. Id. at 7. The respondent asserts that the petitioner's newly discovered evidence claim was not fairly presented to the state court because the petitioner raises new and different arguments in his *habeas* petition. Id. at 8–9. The respondent argues that the petitioner's *pro se* status does not excuse his inability to articulate a constitutional claim to the state court. Id. at 9. He argues that the court should dismiss the petition as untimely and procedurally defaulted. Id. at 10.

### III. Analysis

#### A. Timeliness

AEDPA instituted a one-year statute of limitations for petitioners seeking federal *habeas* relief. 28 U.S.C. §2244(d)(1). The one-year period begins to run from the latest of the following four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1)(A)-(D).

The Wisconsin Supreme Court denied the petitioner's petition for review on October 16, 2012. The petitioner did not file a petition for writ of *certiorari* with the United States Supreme Court. That means that his conviction became "final"—and his one-year limitation period began to run—ninety days later, on January 15, 2013. Anderson v. Litscher, 281 F.3d 672, 675 (7th Cir. 2002) (statute of limitations begins to run "when, if certiorari was not sought, all direct criminal appeals in the state system are concluded, followed by the expiration of the time allotted for filing a petition for writ"); Supreme Court Rule 13(1) (which requires a person petitioning for a writ of *certiorari* to file that writ within ninety days after entry of the judgment). Because the petitioner's "time allotted for filing a petition for writ" of *certiorari* expired on January 15, 2013, his deadline for filing a federal *habeas* petition was January 15, 2014. The petitioner did not file his original *habeas* petition with this court until June 22, 2022—over eight years after his one-year limitation period had expired.

The one-year limitation period is tolled—paused—during the time that any "properly filed" state post-conviction motions are pending. 28 U.S.C. §2244(d)(2). But that tolling provision does not apply to motions filed after the

9

statute of limitation has expired. De Jesus v. Acevedo, 567 F.3d 941, 943 (7th Cir. 2009); Graham v. Borgen, 483 F.3d 475, 483 (7th Cir. 2007) (holding that a petition for collateral review filed after the federal *habeas* statute of limitation period has expired does not toll the one-year limitation period). The Seventh Circuit Court of Appeals has held that "a state proceeding that does not begin until the federal year has expired is irrelevant" to tolling. De Jesus, 567 F.3d at 943. "Any other approach would eliminate all federal time limits whenever a state does not have (or does not enforce) a time limit for collateral review: a state collateral proceeding, however belated and however unmeritorious, would reset the federal clock." Id. "A state court's order denying a request for collateral review (whether on the merits or for any procedural reason) does not require the exclusion, under § 2244(d)(2), of time that passed before the state collateral proceeding began." Id. at 944.

Both of the petitioner's post-conviction motions were filed in 2018, well after the one-year limitation period expired in January 2014. Dkt. No. 20-4 at 11–12. Even assuming that these constituted properly filed state post-conviction motions, under Acevedo they did not pause the one-year limitation clock. The petitioner's *habeas* petition is untimely.

B. Equitable Tolling

The court may invoke the doctrine of equitable tolling where the petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010). "Equitable tolling is an extraordinary remedy and so 'is rarely granted.'" Obriecht v. Foster, 727 F.3d 744, 748 (7th Cir. 2013) (quoting Simms v. Acevedo, 595 F.3d 774, 781 (7th Cir. 2010)). "A petitioner bears the burden of establishing both elements of the

10

*Holland* test; failure to show either element will disqualify him from eligibility for tolling." Mayberry v. Dittman, 904 F.3d 525, 529–30 (7th Cir. 2018).

"The realm of equitable tolling is a highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis." Socha v. Boughton, 763 F.3d 674, 683 (7th Cir. 2014) (internal quotations omitted). Although equitable tolling is "rare" and "'reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing,'" id. (quoting Nolan v. United States, 358 F.3d 480, 484 (7th Cir. 2004)), a district court must "evaluate the circumstances holistically, considering 'the entire hand that the petitioner was dealt' rather than taking each fact in isolation." Gray v. Zatecky, 865 F.3d 909, 912 (7th Cir. 2017) (quoting Socha, 763 F.3d at 686)). A petitioner must show more than just that his circumstances "may have made it more difficult for him to file a petition for habeas corpus." Carpenter v. Douma, 840 F.3d 867, 873 (7th Cir. 2016). "Incarceration alone, for example, does not qualify as an extraordinary circumstance." Socha, 763 F.3d at 685.

The petitioner has not shown that extraordinary circumstances prevented him from timely filing his petition. The petitioner states that he was placed in segregation in 2014 and 2015 and thus was unable to work on his petition during those periods. Dkt. No. 39 at 6. The petitioner was without his documents until the summer of 2015. Id. Then he was transferred to another facility. Id. at 7. The petitioner says that in 2018, he discovered evidence that the state allegedly failed to provide to him in his original case. Id. The petitioner argues that this combination of external factors rises to the level of "extraordinary circumstances" required for equitable tolling. Id. at 7–8. The court disagrees.

Some of the petitioner's obstacles, such as his placement in segregation and facility transfer, are the sorts of delays an incarcerated person must expect in prison life. "[A] prisoner may not rely on 'expected, albeit unpredictable' delays associated with prison life in seeking equitable tolling of AEDPA's statute of limitations." Casas v. United States, 88 F. Supp. 2d 858, 861 (N.D. Ill. 1999); Moreland v. Eplett, 18 F.4th 261, 271 (7th Cir. 2021) ("[C]ommon parts of prison life" are also not considered "extraordinary" as required to toll the limitations period). "Placement in administrative segregation alone is also not enough by itself." Socha, 763 F.3d at 685. The petitioner's argument that he was without his documents for a year would be more helpful to show extraordinary circumstances—but the reason the petitioner did not have his documents is because he gave them to another incarcerated person who was assisting him with his petition and that incarcerated person took the petitioner's documents with him during a prison transfer. Dkt. No. 39 at 6. The petitioner's decision to entrust his documents to a "jailhouse lawyer" was at his own peril. Famous v. Fuchs, 38 F.4th 625, 634 (7th Cir. 2022), cert. denied, 143 S. Ct. 794 (2023) ("[W]hen a petitioner entrusts his court papers to another prisoner, the petitioner continues to bear the responsibility for any delay in filing.").

Further, all but one of the obstacles the petitioner argues he faced occurred *after* his one-year limitation period expired in January 2014. See Dkt. No. 39 at 6. According to the petitioner's brief in opposition to the motion to dismiss, his first obstacle—placement in segregation—did not occur until "2014;" the petitioner did not provide a specific date. Id. Even if the petitioner was placed in segregation on January 1, 2014 (two weeks before his January 15 filing deadline), he has not explained why placement in segregation at the

12

very end of his filing period prevented him from timely filing his petition during the prior year. The petitioner says that the incarcerated person who was helping him with his petition was transferred to another facility while the petitioner was in segregation. Id.

The one obstacle that did not occur prior to the expiration of the deadline for the petitioner to file his federal *habeas* petition was his 2018 receipt of the "Waller Report." The petitioner explained:

> The bulk of the state's case at trial relied on [the petitioner's] confession initially given to Detective Buschmann. However, the facts surrounding how that confession was elicited are inconsistent and Detective Buschmann has obtained wrongful confessions in other cases, such as in the *Ott* case. *State v. Ott*, No. 2008AP34, unpublished slip op. (WI App Dec 23, 2008). In 2018, the *Ott* wrongful confession was investigated and writ of coram nobis was granted in *State v. Hardaway*, 2018 WI App 59, 384 Wis. 2d 185, 918 N.W.2d 85. This information sparked the current habeas petition, which was filed by [the petitioner] on June 22, 2022.

Id. at 1-2. The petitioner explains that in 2018, he and another incarcerated person who was assisting him "obtained the Waller and Associates LLC report . . . from the *Ott* case," which included a 2007 complaint against Buschmann which the state had not turned over to the petitioner's appellate counsel. Id. at 3-4.

The petitioner included the "Waller Report"—a letter from Waller & Associates to an attorney in Chicago regarding the Ott case. Dkt. No. 40-1. That report did allege that in the Ott case, Buschmann failed to corroborate the statements of a vulnerable victim, destroyed his notes, did not take notes during part of the confession and appeared not to have turned over DNA results. Id. But that report is dated March 28, 2013. Id. at 1. The petitioner also attached a January 9, 2007 complaint that mentions Buschmann. Dkt. No. 40-2. Both of these documents predate the January 15, 2014 expiration of

13

the limitation period. The petitioner implies that he was not aware of the allegations against Buschmann until 2018. But that is not correct. The court of appeals' opinion shows that the petitioner was aware of the allegations against Buschmann at the time of his trial; the court discusses the fact that the petitioner's trial lawyer unsuccessfully sought permission from the trial court to cross-examine Buschmann regarding "high-pressure interrogation tactics" in support of the petitioner's argument that he was pressured into signing a false confession "and that Buschmann had previously elicited false information leading to a wrongful conviction in the case of Chaunte Ott," a conviction that had been overturned. Dkt. No. 20-2 at 3.

The petitioner has not explained what he and the person who was assisting him did in 2018 to get these years-old documents, or why the petitioner could not have done so years earlier when he knew in 2009 that Buschmann had been found to have pressured a defendant in a different case into making a false confession.

The petitioner has not identified any extraordinary circumstances that prevented him from timely filing the petition.

Because the petitioner cannot show that extraordinary circumstances prevented his filing, the court need not address whether the petitioner diligently pursued his rights. Mayberry, 904 F.3d at 529–30. Even if the court had needed to reach that issue, it would have concluded that the petitioner cannot show diligence under Holland. The petitioner argues that he showed diligence by "recruit[ing] fellow inmates" to assist with his case and by filing his post-conviction motion in 2018. Dkt. No. 39 at 8. But the petitioner filed that motion four years after his limitation period expired. The court cannot consider a late motion as evidence of diligence. Carpenter, 840 F.3d at 871 (petitioner

who filed improper extension motion one month after limitation period expired was not sufficiently diligent to warrant equitable tolling). It is unclear why the petitioner's collaboration with other inmates would establish diligence. Although the court does not dispute that the petitioner did spend time working on his case while he was incarcerated, that is not enough to show reasonable diligence under Holland. Mayberry, 904 F.3d at 531 ("[M]ere conclusory allegations of diligence are insufficient and reasonable effort throughout the limitations period is required.").

Because the petitioner did not timely file his *habeas* petition and because he has not demonstrated that equitable tolling is warranted, the court need not address the parties' arguments about whether the petitioner's claims are procedurally defaulted. The court will grant the respondent's motion to dismiss the petition as untimely.

## IV. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 472, 494 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because no reasonable jurist could debate that the petitioner's petition should be dismissed as untimely under 28 U.S.C. §2244(d).

## V. Conclusion

The court **GRANTS** the respondent's motion to dismiss the second amended habeas petition. Dkt. No. 37.

The court **ORDERS** that the petition for writ of *habeas corpus* is **DISMISSED** as time-barred under 28 U.S.C. §2244(d). The clerk will enter judgment accordingly.

The court **DECLINES TO ISSUE** a certificate of appealability.

Dated in Milwaukee, Wisconsin this 30th day of September, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**